**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

DAVID J. SCOTT,

       Plaintiff,

v.                                                                    Case No.  06-13916

DANIEL A. BURRESS, THOMAS CREMONTE,          District Judge Arthur J. Tarnow
BRIAN LAVAN, DARYN COBB, BERRY
GETZEN, THOMAS DECLERQ, and JAMIE            Magistrate Judge Virginia M. Morgan
CORONA,

       Defendants.

                                               /

**ORDER GRANTING IN PART AND REJECTING IN PART SCOTT'S OBJECTIONS [51];**
**REJECTING IN PART AND ADOPTING IN PART THE REPORT AND RECOMMENDATION [48];**
**DENYING IN PART AND GRANTING IN PART BURRESS AND CREMONTE'S MOTION TO DISMISS**
**[9];**
**DENYING LAVAN'S MOTION TO DISMISS [16];**
**GRANTING COBB'S MOTION TO DISMISS [17];**
**VACATING IN PART THE ORDER OF REFERENCE [3] AND GRANTING GETZEN, CORONA, AND**
**DECLERQ'S MOTION TO DISMISS [56]**
**AND DENYING SCOTT'S APPEAL [52] OF MAGISTRATE JUDGE'S ORDER DENYING MOTION TO**
**HOLD IN ABEYANCE DEFENDANTS' MOTIONS TO DISMISS**

I.      Introduction
II.     Facts
III.    Procedural Framework
IV.    State defamation claim
V.     Cremonte, Cobb, Getzen, Corona, DeClerq, and qualified immunity
VI.    Burress and Lavan
      A.     Conspiracy is enough of a basis for liability to attach
      B.     *Memphis Local* and Scott's Adequate Allegation of Conspiracy
      C.     *Twombly*
      D.     Retaliation - failure to state a claim?
           1.     The argument that there was no protected conduct
                a.     Who engaged in protected conduct?
                b.     Validity of the subpoena
                 c.     Was the conduct unauthorized and therefore unprotected?
           2.     What was the adverse action?
           3.     Did the protected conduct cause the retaliatory transmission?
VII.   Conclusion

I.  Introduction

Before the Court are plaintiff Scott's objections to Magistrate Judge Morgan's Report and Recommendation.  The court grants in part the objections and rejects in part the report and recommendation.  On the basis of qualified immunity, the court grants the motions to dismiss filed by Livingston County Sheriff Department Lieutenant Cremonte and Michigan Department of Corrections Parole Agent Cobb. The motions to dismiss filed by retired Judge Burress and attorney Brian Lavan are denied: as private parties at the time of the alleged constitutional violation, they are not shielded by qualified immunity.

Magistrate Judge Morgan's report and recommendation advised the court to grant the motions to dismiss filed by Cobb, Lavan, and Burress and Cremonte.  After Magistrate Judge Morgan had entered her report and recommendation, the other defendants – Michigan State Police Officers Getzen, DeClerq, and Corona – filed a motion to dismiss.  Magistrate Judge Morgan had ordered Scott to respond to this last motion to dismiss, but her order was returned in the mail as undeliverable.  Scott's address of record on the court docket is on Shelway Drive in Brighton.  But below his signature on his most recent filings on September 19 2007, Scott left a different address, a P.O. box in Brighton.  The certificates of service on the recent motion to dismiss or on Magistrate Judge Morgan's order do not indicate the particular address where the papers were sent to Scott.  It is possible that plaintiff Scott did not receive either the motion or the order.  Scott has not timely responded to this recent motion to dismiss.

But Getzen, DeClerq, and Corona's motion does not raise significant, new arguments against Scott's case.  Furthermore, in addressing Cobb's and Cremonte's motions to dismiss, Scott has already had an opportunity to respond to the defense of qualified immunity.  Therefore, the recent motion to dismiss is ready to be decided, so the court vacates its order of reference to Magistrate Judge Morgan as to Getzen, DeClerq, and Corona's motion.  And the motion is granted on the basis of qualified immunity.  The court will send this order to both of Scott's addresses, and he may move for reconsideration of this order if he had not received the recent motion to dismiss.

The court denies plaintiff's appeal of Magistrate Judge Morgan's order denying plaintiff's motion to hold the motions to dismiss in abeyance. Scott had filed that motion to hold the case in abeyance so that he could conduct discovery. Because the court is largely denying the motions to dismiss of the defendants who are not state officials, Scott's motion to hold in abeyance is moot.

David J. Scott was once a state prisoner. He alleges that his now-retired sentencing judge, an attorney in private practice, and members of the Michigan police and correctional systems conspired and retaliated against him for his exercise of constitutionally protected rights. Scott was scheduled to be released on parole, but one of the defendant police officers sent a letter to the parole board warning of Scott's alleged plans to kill his sentencing judge and an attorney. The board then suspended parole.

Scott contends that this letter was defamatory and that the defendants retaliated against him because he had subpoenaed the sentencing judge in a suit that started over ten years ago.

## II. Facts

In a prisoner civil rights lawsuit in the Western District of Michigan, Scott subpoenaed Judge Burress, the state judge who had sentenced him earlier. *See* Complaint at 3, ¶ 9; Memorandum Opinion in *Scott v. Bair*, Ex. 1 to Burress and Cremonte's Motion to Dismiss. That court eventually quashed the subpoena, ruling that it was irrelevant to Scott's claim. *See* Mem. Opinion at 7.

Scott contends in the instant case that former Judge Burress and the other defendants conspired and retaliated against Scott for issuing the 2005 subpoena against Burress. Complaint at 4, ¶ 13. This retaliation took place, says Scott, when Lieutenant Cremonte's letter dated August 5, 2005 was faxed on August 15, 2005 to the Michigan Parole Board. Complaint at 3, ¶ 10.

Cremonte addressed his letter to Getzen, not the Parole Board. *See* Burress's and Cremonte's Supplemental Reply Br. in Supp. of Mot. to Dismiss, Ex. A (letter that Scott alleges

was defamatory).  Cremonte wrote that his "reason for this letter [was] to express [his] concern over Mr. Scott's release."  Cremonte did not expressly ask that Scott's parole be suspended.  Rather, he requested that the Michigan State Police assist with "some temporary intelligence gathering and surveillance on Scott immediately upon release."  *See id.* at 2.  Sheriff Cremonte's letter stated that Scott intended to kill attorney Lavan and Judge Burress, because Scott believed that they had played a role in his incarceration.  According to the letter, the FBI reported to Cremonte's office that Scott had tried to hire people to kill Lavan.  The letter also described Scott as "a very problematic inmate . . . [and] a rule breaker" who "files lawsuits regularly."

## III.  Procedural Framework

Magistrate Judge Morgan's Report and Recommendation outlines the applicable procedural law.  The court notes, though, that a motion to dismiss under Fed. R. Civ. P. 12(b)(6) challenges the facial validity of the complaint.  In other words, the question is whether "as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true."  *See* R&R at 5 (citing *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993)).  Furthermore, the complaint is the focus of the 12(b)(6) inquiry.  But the court –  without converting a motion to dismiss into a motion for summary judgment – can consider documents attached as exhibits to a motion to dismiss if they are referred to in the plaintiff's complaint and are central to the plaintiff's claim.  *See* R&R at 6 (citing *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 510 n.2 (2002)).

## IV.  State defamation claim

Even if the court credits Scott's assertion that Cremonte faxed the letter to Getzen on August 15, 2005, Scott's state defamation claim is untimely.  Scott's summons was only issued on Thursday, August 17, 2006, beyond the one-year limitations period, even if the cause of action accrued on August 15, 2005.  *See* Burress and Cremonte's Reply, Ex. B.  The filing of a complaint is not enough to toll the statute of limitations under Michigan law.  *See Gladych v.*

*New Family Homes*, 664 N.W.2d 705, 706 (Mich. 2003). A copy of the summons with the

complaint has to be served on a defendant, or at least these copies need to be placed in the hands

of an officer for immediate service. *See Gladych*, 664 N.W.2d at 708 (citing M.C.L. §

600.5856). Scott's summons was only issued on August 17, 2006, so he cannot satisfy the

requirements of the tolling provision as interpreting by *Gladych*. Scott's defamation claim is

therefore dismissed.


## V. Cremonte, Cobb, Getzen, Corona, DeClerq, and qualified immunity

The court assumes that Scott adequately states a claim that the defendants conspired and

violated his right to access the courts by retaliating against him for attempting to collect evidence

in his earlier case when he subpoenaed Judge Burress. Even assuming that Scott's constitutional

rights were violated in this manner, Scott has not shown that his constitutional right was clearly

established. Although Scott correctly notes that the right of access to the courts in general has

been clearly established, a reasonable officer may not have known that Scott's conduct was

constitutionally protected, given that the subpoena was eventually quashed. *See Anderson v.

Creighton*, 483 U.S. 635, 640 (1987) ("contours of the right must be sufficiently clear that a

reasonable official would understand that what he is doing violated that right"). Therefore,

Cremonte, Cobb, Getzen, Corona, and DeClerq, as state officers, are protected by qualified

immunity.


## VI. Burress and Lavan

Qualified immunity does not shield Brian Lavan from Scott's suit, because he is a private

party. Nor is Judge Burress protected by qualified immunity, because at the time of the alleged

retaliation, he was no longer a state officer. Judge Scoville's May 12, 2005 memorandum

opinion in *Scott v. Bair* indicates that Burress was a retired state circuit judge. *See* Memorandum

Opinion at 2, Ex. 1 to Burress and Cremonte's Motion to Dismiss.

But even a private party can be liable under 42 U.S.C. § 1983 if the person conspires with

state actors to violate someone's constitutional rights. *See Memphis Local*, 361 F.3d at 905; *Revis v. Meldrum*, 489 F.3d 273, 292 (6th Cir. 2007) (citing *Memphis Local*). In Scott's case, although Lavan and Burress are private parties, they can be liable under § 1983 because they allegedly conspired with the other defendants – namely, the police officers and parole agent – who acted under color of state law.

A. Conspiracy is enough of a basis for liability to attach

The report and recommendation inappositely relies on *Hays v. Jefferson County*, 668 F.2d 869, 872 (6th Cir. 1972) to support the conclusion that Brian Lavan and Judge Burress are not liable under § 1983, because they were not personally involved and responsible for the wrongdoing. *Hays* reiterated the principle that an officer who merely had a right to supervise an employee could not be directly liable under a § 1983 claim. More than negligent failure to supervise an employee is required for liability to attach to the supervisor. *Hays*, however, did not deal with conspiracy. The issues are different when deciding how to impose liability on supervisors compared to how to impose liability on conspirators. Supervisors have a standard of care in supervising their employees according to which they are deemed negligent or reckless. But this concept of a standard of care does not come into play among conspirators.

Scott's allegation that Lavan and Burress were part of a conspiracy to violate his constitutional rights is enough of a basis for liability to potentially attach.

B. *Memphis Local* and Scott's Adequate Allegation of Conspiracy

Furthermore, the procedural posture of Scott's case requires that the court look to the facial validity of the allegations in his complaint, not whether he will have the evidence to prove these allegations after discovery yet to take place. *Memphis, Tenn. Area Local, Am. Postal Workers Union v. City of Memphis*, 361 F.3d 898, 905-06 (6th Cir. 2004) supports the court's decision that Scott has stated a claim for civil conspiracy under § 1983. In *Memphis Local*, a labor union alleged that the Memphis police department conspired with management and management's private security company to deprive the union's constitutional rights. The Sixth Circuit determined that the labor union's complaint alleged conspiracy under § 1983 adequately

enough to withstand motions to dismiss by the defendants.  The complaint did not allege that all

three defendant co-conspirators engaged in the active misconduct, such as "arresting and

detaining strikers without cause."  *See Memphis Local*, 361 F.3d at 901.  Instead, the complaint

alleged that the Memphis police committed the active misconduct, while all three defendants

conspired to do so.  *Id.* at 901-902.

Similarly, plaintiff Scott does not allege that Lavan or Burress wrote the letter or

transmitted it to the Parole Board.  But Scott does contend that Lavan and Burress entered into a

conspiracy with the other defendants to retaliate against Scott, Complaint at 6, ¶ 28, even though

the active misconduct of retaliation was committed by only one or two of the defendant co-

conspirators.  *See Applied Equip. v. Litton Saudi Arabia*, 869 P.2d 454, 457 (Cal. 1994) (in tort

context, civil conspiracy attaches liability to all co-conspirators, not just the direct actor, for

damages resulting from acts done pursuant to conspiracy).

Furthermore, Scott's allegations were at least as specific as the plaintiff labor union's

allegations in *Memphis Local*.  As *Memphis Local,* 361 F.3d at 905, outlined, civil conspiracy

has three elements: (1) that a single plan existed, (2) that the conspirators shared in the general

conspiratorial objective, and (3) that an overt act was committed in furtherance of the conspiracy

that caused injury.  The labor union's allegation in *Memphis Local* that the conspiracy "was the

result of an agreement" was enough to allege that a single plan existed.  *See Memphis Local*, 361

F.3d at 905 (internal quotation omitted).  The element requiring that conspirators share in the

general conspiratorial objective was adequately alleged when the labor union claimed that the

defendants sought to "deprive [the labor union] of its rights, privileges and immunities."  *See id.*

Similarly, Scott's complaint alleges that a single plan existed: "Defendants agreed with each

other upon a single plan to injure Plaintiff by the unlawful actions described above."  Compl. at

6, ¶ 29.  Scott's complaint also alleges that the defendants shared a conspiratorial objective of

"depriv[ing] Plaintiff of his constitutional right to petition the government for redress . . . [and]

retaliat[ing] against Plaintiff for exercising that right."  Compl. at 5, ¶ 24.  And Scott certainly

alleged that an overt act injuring him was committed pursuant to the conspiracy: namely, the

transmission of the letter to the Parole Board. Compl. at 3-4.

Scott also alleges that the defendants, including those who were not overtly responsible for faxing the letter to the Parole Board, reiterated the false accusations to others "on numerous occasions." Compl. at 4, ¶ 14. These repeated statements might also be overt acts done pursuant to the conspiracy but Scott does not allege how these statements are causally connected to the suspension of parole, the injury that Scott suffered. Although Scott does not say exactly where or to whom these statements were made, they are factual allegations that buttress the conspiracy claim.

C. *Twombly*

Such lack of detail does not mean that the court should grant defendants' motions to dismiss, even under the Supreme Court's recent decision in *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007). True, there is "some uncertainty concerning the scope of *Bell Atlantic Corp. v. Twombly*" where the Supreme Court dismissed an antitrust-conspiracy complaint because it did not contain factual allegations "sufficient to state a claim to relief that is plausible on its face." *Commercial Money Center, Inc. v. Illinois Union Ins. Co.*, slip op. at 5 n.4, no. 06-3767 (6th Cir. Nov. 14, 2007). Reading *Twombly*, the Sixth Circuit has stated that "even though a complaint need not contain 'detailed' factual allegations, its '[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true.'" *Ass'n of Cleveland Firefighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Twombly*, 127 S.Ct. at 1964-65).

However, soon after *Twombly*, the Supreme Court decided *Erickson v. Pardus*, 127 S.Ct. 2197, 2200 (2007), where it stated that "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Id.* (quoting *Twombly*, 127 S.Ct. at 1964).

Courts have tried to reconcile *Twombly* and *Erickson*. Judge Clay suggests that *Twombly*'s holding is "limited to cases likely to produce 'sprawling, costly, and hugely time-consuming' litigation." *Midwest Media Property v. Symmes Twp., Ohio*, slip op. at 4 n.1, No.

06-3828 (6th Cir. Jan. 10, 2008) (Clay, J., dissenting from denial of rehearing *en banc*) (quoting *Twombly*, 127 S.Ct. at 1973 n.6). In *Weisbarth v. Geauga Park Dist.*, 499 F.3d 538, 541-42 (6th Cir. 2007), Judge Gilman borrowed from the Second Circuit's analysis in *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007), saying that "*Iqbal* interpreted *Twombly* to require more concrete allegations only in those instances in which the complaint, on its face, does not otherwise set forth a plausible claim for relief." *Weisbarth* , 499 F.3d at 542.

Scott's complaint alleges that Judge Burress and Lavan were part of the plan to retaliate against Scott, and that Burress and Lavan have repeated to other people the malicious accusation that Scott wanted to kill them. The court sees no reason to employ heightened pleading standards. Besides, Scott has alleged the fact that Burress and Lavan themselves repeated the accusation. Taken as true, such a factual allegation renders the conspiracy claim plausible. *Twombly* does not necessarily govern the court's analysis, but in light of *Iqbal*'s interpretation of *Twombly*, Scott's complaint states a claim of civil conspiracy to violate his civil rights.

D.  Retaliation - failure to state a claim?

The gist of an action for civil conspiracy is not the agreement itself, which by itself furnishes no cause of action, but the underlying wrong committed by the conspirators. *Griese-Traylor Corp. v. First Nat. Bank of Birmingham*, 572 F.2d 1039, 1045 (5th Cir. 1978). Therefore, for Scott to state a claim that Judge Burress and attorney Lavan conspired to violate his rights, the court must determine whether Scott has stated a claim for the underlying retaliation. *See Torres-Rosado v. Rotger-Sabat*, 335 F.3d 1, 14 (1st Cir. 2003) ("To demonstrate conspiracy under § 1983, plaintiff must show an actual abridgement of some federally-secured right."). Magistrate Judge Morgan's report explains the elements of a retaliation claim under § 1983. To survive defendants' motions to dismiss, plaintiff Scott must allege that "1) he engaged in protected conduct, 2) the defendant took an adverse action that would deter a person of ordinary firmness from continuing to engage in that conduct, and 3) the adverse action was taken at least in part because of the exercise of the protected conduct." *Siggers-El v. Barlow*, 412 F.3d

693, 699 (6 th Cir. 2005).

### 1.  The argument that there was no protected conduct

#### a.  Who engaged in protected conduct?

On the question of whether Scott has adequately alleged that he engaged in protected conduct, the report and recommendation reasons that Scott himself did not engage in protected conduct, since it was his lawyer who served the subpoena on Judge Burress.  Even though Scott's counsel served the subpoena, lawyers do not direct cases themselves but follow instruction competently given by clients.  So the decision to subpoena Judge Burress in the Western District of Michigan litigation can be ascribed to Scott; it was Scott, not merely his counsel, who engaged in protected conduct.

#### b.  Validity of the subpoena

The report and recommendation also discusses the validity of the subpoena of Judge Burress from the earlier suit, but the propriety of the subpoena is irrelevant for the purposes of Scott's instant retaliation claim.  The court agrees that Scott's subpoena of Judge Burress in the earlier lawsuit made no sense and that Judge Scoville of the Western District of Michigan was right to quash it.  Scott's allegation in that case was that Judge Burress was part of a conspiracy "to cover up a public corruption scandal. " But "even if assumed to be true, [the allegation] had no bearing on . . . [Scott's] prisoner civil rights action, which dealt with a discrete incident of alleged retaliation [by his jailer] taking place many years" after his sentencing.  *See* Memorandum Opinion in *Scott v. Bair* at 4, Ex. 1 to Burress and Cremonte's Motion to Dismiss.

The question is this, then: Does the Constitution, in particular the petition clause of the First Amendment, afford someone the right to issue and serve a subpoena on a potential witness in order to present a case for redress from the court, even if later the court decides that the subpoena was improper? The report and recommendation's discussion of the validity of the subpoena imply that the answer is no.

The court believes, on the contrary, that there is such a right to attempt to collect the evidence a litigant needs to bring her case, even if later the court decides otherwise.  From the *ex*

*ante* perspective of a litigant, he may seek to depose a witness who will not voluntarily come forward.  Therefore, the litigant has to bring a subpoena.  Unless a court found that the subpoena was issued in bad faith, such an effort to develop the factual basis of one's claim should be constitutionally protected.  Under the current Federal Rules of Civil Procedure, a court has the authority to impose a sanction for breach of the duty to avoid imposing undue burden on a person subject to a subpoena.  *See* Fed. R. Civ. Proc. 45(c)(1).  Presumably, this option would have been available to Judge Scoville, but there is no indication in his memorandum opinion that he found Scott's subpoena to have been issued in bad faith.  *See also* Transcript of hearing on motion to quash at 35, Scott's Resp. to Burress and Cremonte's Motion to dismiss, Ex. 1 (Judge Scoville said "I'm not saying it was in bad faith or malicious, but it was at least thoughtless" to subpoena sitting judge for deposition at prison where Scott was incarcerated).

Moreover, the underlying issue in the present case is whether the defendants' adverse action of allegedly (conspiring to supply and) supplying false information to the Parole Board could chill future exercise of protected conduct.  Retaliation is not actionable under § 1983 because the adverse action actually inhibits the first instance of protected conduct: the protected conduct would have already taken place.  Rather, retaliation is actionable because the experience of adverse action by the plaintiff could chill his and others' liberty to engage in the future in constitutionally protected activity.  *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 n.9 (6th Cir. 1999) (en banc) ("The reason why such retaliation offends the Constitution is that it *threatens to inhibit* the exercise of the protected right.") (emphasis added).  Thus, when deciding a retaliation claim, the court should look at protected conduct from the perspective of one about to embark on engaging in the conduct.  The court must sit in the shoes of Scott (or any other litigant) as he considers whom to subpoena in order collect evidence to support his case, even though later the subpoena may be deemed invalid, the evidence inadmissible, or the claim without merit.

c.  Was the conduct unauthorized and therefore unprotected?

The report and recommendation's last reason for deeming Scott's litigation tactics unprotected is that his subpoena of Judge Burress was not authorized because it was ultimately

quashed. The report cites an unpublished case *Friedman v. Scott*, 1999 WL 775916, (6th Cir. 1999) that elaborates on a statement in *Thaddeus-X*, 175 F.3d at 395. *Thaddeus-X* explained that the scope of protected conduct for prisoners is necessarily smaller than for those who are not incarcerated, presumably because the fact of being imprisoned already implies a deprivation of liberty. Attendant prison regulations "are allowed to infringe on prisoners' rights as long as they are rationally related to a legitimate penological concern. Therefore, if a prisoner violates a legitimate prison regulation, he is not engaged in 'protected conduct'" and cannot state a § 1983 retaliation claim.

Judge Scoville's decision to quash Scott's subpoena in the earlier lawsuit does not mean that Scott's subpoenaing was unauthorized and therefore unprotected conduct. True, just as First Amendment free speech rights are limited in the prison setting, *see Thaddeus-X*, 175 F.3d at 389, so is the First Amendment right to access the courts narrowed for prisoners. *Thaddeus-X* stated that "a prisoner's right to access the courts extends only to direct appeals, habeas corpus applications and civil rights claims *only*," *see id.* at 391 (emphasis added), because those are the only actions where inmates "attack their sentences ... [or] challenge the conditions of their confinement." *Id.* (citing *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (Scalia, J.)). But Scott's earlier lawsuit was indeed challenging the conditions of his confinement, as it dealt with the actions of his correctional officer in retaliating against Scott for Scott's stated intention to file a grievance against the officer. *See* Memorandum Opinion in *Scott v. Bair* at 2-3, Ex. 1 to Burress and Cremonte's Motion to Dismiss. Defendants do not allege that prison regulations precluded Scott from issuing the subpoena or in pursuing his earlier suit against Bair. Therefore, Scott's conduct was not "unauthorized" under *Friedman* or *Thaddeus-X*.

### 2. What was the adverse action?

The second element of a § 1983 retaliation claim requires adverse action that would have deterred a person of ordinary firmness from engaging in protected conduct. The report and recommendation states that no matter what one deems the adverse action in Scott's situation, plaintiff cannot adequately allege that the protected conduct caused the adverse action.

-12-

By way of summary, Scott did adequately allege that an adverse action took place, and that this adverse action was the transmission of the letter to the Parole Board. He did allege that the retaliation caused the harm he suffered, namely the suspension of parole and the attendant loss of liberty. With the aid of discovery and at trial, Scott could present evidence to establish the reasonable foreseeability of his suspension given the nature of the letter sent to the parole board and how the parole board works in practice. He could even point to the statutory and regulatory guidelines that circumscribe if and how the parole board scrutinizes information it receives when making parole determinations. Finally, there are other instances in tort where courts impose liability on intervening actors who influence a decision-maker to give up a favorable commitment to a plaintiff. Tortious interference with contract or with business are two examples. Alienation of affection is an archaic instance where the law imposed liability on intervening parties, like the conspirators in Scott's case.

If one deems the adverse action to be the denial of parole, Magistrate Judge Morgan's report says, then Scott's complaint should be dismissed because those who took that adverse action, that is, the Parole Board, are not named as defendants. The court agrees. But it is incorrect to denote the adverse action as the denial of parole. Scott is not alleging that the defendants, who he claims took the adverse action and retaliated against him, denied him parole.

Instead, Scott argues that the defendants conspired to feed false information to the Parole Board as payback for Scott's subpoena of Judge Burress. This feeding of falsity was the adverse action. The subsequent suspension of parole was the damage caused by defendants' adverse action. In this case, there are two layers of causation. The first layer of causation (and third element of a § 1983 retaliation claim) that Scott must allege under *Thaddeus-X* to state a § 1983 retaliation claim is that the feeding of false information to the Parole Board – the adverse action – was motivated, at least in part, by the protected conduct. The second layer of causation Scott would eventually need to show at trial was that the adverse action taken by the defendants caused the damage that Scott experienced. Scott's complaint alleges as much when it states that *"by reason of* the acts of the Defendants in . . . publishing . . . said false . . . statements, the

Plaintiff was exposed to public contempt, ... and his parole was revoked by the Michigan Parole Board." Complaint at 4, ¶ 15 (emphasis added). Framed as a tort case, the defendants owed a duty to respect Scott's constitutional rights; they breached that duty by retaliating against him for his exercise of his rights when they fed false information to the Parole Board. The consequent suspension of parole was a reasonably foreseeable result of the receipt of this kind of information from law enforcement about a prisoner soon to be paroled.

*Thaddeus-X* elaborates on what counts as an adverse action. Explaining that the term is borrowed from employment law, the Sixth Circuit listed "discharge, [and] demotions" as examples of adverse actions from the employment context. *See Thaddeus-X*, 175 F.3d at 396. It might appear that the examples of adverse action from *Thaddeus-X* are more analogous to the ultimate suspension of parole by the Board. But the court expressly adopted a definition of adverse action formulated by Judge Posner in a 1982 Seventh Circuit case where he suggested that an adverse action is "one that would deter a person of ordinary firmness from the exercise of the right at stake." *Thaddeus-X*, 175 F.3d at 396. So the court's inquiry begins with someone in Scott's situation and asks whether the prospect of law-enforcement authorities presenting false accusations to the Parole Board would deter a person of ordinary firmness in Scott's situation from subpoenaing his sentencing judge. It seems quite evident that a prisoner would be hesitant to engage in protected conduct, because it is plausible that the Parole Board, whose determination affects the prisoner's liberty, would probably take at face value what several law enforcement officers say, as opposed to ascribing much deference to a prisoner's version of the truth.

The report and recommendation points out that the defendants were not decision-makers and were not responsible for the Board's decision to suspend parole. This argument does not pertain to the causality Scott must allege as part of his § 1983 retaliation claim. Rather, Magistrate Judge Morgan's analysis gets to the causation that Scott would have to show between the retaliatory transmission of the letter and the harm that he suffered. On the surface, the case citations in the report and recommendation seem to support the principle that causation cannot be

established for a § 1983 retaliation claim when an intruder supplies allegedly false information to a decision-maker. But these cases (or the plaintiffs in these cases) make the mistake of defining the adverse action as the ultimate decision of the decision-maker, rather than as the actions of the intervening person who supplies misinformation and instigates trouble against the plaintiff in bad faith.

*Echlin v. Boland*, 2004 WL 2203550 (6th Cir. 2004) is an unpublished case that is factually quite similar to Scott's suit. A while ago, prisoner Echlin had first been denied parole by the Board. Plaintiff appealed that first denial in state court. The court vacated the Board's denial and noted that Echlin was doing poorly with regard to court-mandated therapy because his instructor had been absent. Echlin alleged in his § 1983 claim that the psychologist retaliated against him, presumably for his pursuit of the litigation around the first denial of parole, by submitting false documents to make it look like Echlin was doing poorly in the therapy program. Echlin filed a grievance with the psychologist's supervisor, who responded. The psychologist modified his reports but still said that Echlin was not reaching his therapy goals. The Board denied parole a second time. The Sixth Circuit's unpublished decision affirmed the district court's grant of summary judgment for the defendants and stated that the psychologist could not be liable for his retaliatory feeding of false information, because it was the Parole Board that made the decision. Therefore, the court said, the motivation of the non-decision-maker psychologist in supplying the information could not establish "a causal connection in a retaliation case. . . . Boland, a prison psychologist, was not in the position to grant or deny parole . . . Accordingly, Echlin could not establish a causal connection between Boland's alleged malice and the parole board's decision to deny." *See Echlin*, at *2.

This causal connection, however, is not the causation element required in a 1983 retaliation claim if one regards Boland as the adverse actor. The link between the psychologist Boland's false feeding of information and the denial of parole goes to the overall tort case. Retaliation under § 1983 requires a causal link between Echlin's protected conduct and Boland's adverse action. The *Echlin* court decided to regard the denial of parole, rather than Boland's

misinformation, as the adverse action.  So even in the *Echlin* situation, a § 1983 retaliation claim framing Boland instead  as the adverse actor might have succeeded. Given the court's decision to regard the denial of parole as the adverse action, *Echlin* just shows skepticism that a prisoner plaintiff could show causation between the non-decision-maker's retaliatory adverse action and the harm that the prisoner suffered.   Moreover, because *Echlin* cites a few cases in support of this proposition, this skepticism seems on the surface to be set as a matter of law, rather than being open to factual development.

In the closest case cited by *Echlin*, *Smith v. Campbell*, 250 F.3d 1032 (6th Cir. 2001), a prisoner brought a § 1983 retaliation claim.  Smith argued that prison staff prevented him from assisting another inmate as a legal advisor, and that his subsequent filing of grievances was protected conduct.  *See Smith*, 250 F.3d at 1037.  The adverse action was the Warden's transfer of the plaintiff to a higher security prison.  *See id.* at 1037-38.  The only evidence that Smith had to show a causal connection were statements by his counselor around the time that he was filing a grievance and a lawsuit to challenge the prison's disposition of his earlier grievances.  The counselor told him "that she was a 'company girl' and that the prison could transfer Smith and say it was based on institutional needs."  *See Smith*, 250 F.3d at 1035.  The Court reasoned that the counselor was not a decision-maker, so her comments to Smith "cannot be taken as evidence of a retaliatory motive."  *See Smith*, 250 F.3d at 1038.  This case is distinguishable from Scott's situation, though.  Smith did not appear to allege that the counselor supplied the warden with misleading information to instigate his transfer.  In other words, in *Smith*, the counselor – who did not make the decision about the prisoner's ultimate status –  is not the adverse actor, because she did not supply any misinformation.  But in Scott's case, the people who did not make the decision about Scott's ultimate status were indeed the adverse actors.  All that the court in *Smith* was saying that the counselor's statements do not evidence retaliatory motive that can be attributed to the warden, who took the adverse action.

*Smith* cited one § 1983 retaliation case for the proposition that the non-decision-maker's statements could not be taken as evidence of retaliatory motive.  In *Shehee v. Luttrell*, 199 F.3d

295 (6th Cir. 1999), a prisoner who worked in the commissary refused to give kickbacks demanded by the supervising prison staffer. The supervisor then instigated an investigation of the prisoner Shehee, accusing him of trying to make alcohol with overripe fruit. While the investigation was going on, Shehee was placed in isolation. Shehee said the investigation was a pretext for punishing Shehee for his refusal to cooperate with the kickback scheme. Shehee then filed a grievance. The boss of Shehee's immediate supervisor subsequently fired Shehee from the commissary job. The Sixth Circuit said that the adverse action was the dismissal from the commissary job, *see Shehee*, 199 F.3d at 301, even though Shehee "[i]n his complaint . . .alleged that Fleming, Morgan and Robertson retaliated against him by *wrongfully subjecting him to an investigation* and firing him from his commissary job." *Shehee*, 199 F.3d at 298 (emphasis added). After identifying the dismissal as the adverse action, the court reasoned that Shehee's immediate supervisors in the commissary did not have the authority to fire him and that Shehee could not show on summary judgment that the firing was the result of the filing of the grievance. *See Shehee*, 199 F.3d at 301. The Sixth Circuit made a mistake in failing to treat the instigation of the alcohol investigation as the adverse action, even though Shehee had so alleged in his complaint. *See Shehee*, *supra*, 199 F.3d at 298. Had the court done so, then Shehee could have attempted to offer evidence that a reasonably foreseeable result of an initiated investigation was removal from the commissary job.

In the distinct but related context of employment discrimination under Title VII, the Seventh Circuit articulated a principle that when an "employer simply rubber-stamps a recommendation tainted with illegal bias, the employer is liable for the harm caused," because there is a causal link between the subordinate's illicit motive and the employer's ultimate decision. *See Byrd v. Illinois Dep't of Public Health*, 423 F.3d 696, 708 (7th Cir. 2005). However, if the employer's harmful action was made on an "independent and legally permissive basis," notwithstanding the bias of the subordinate, the employer's ultimate decision is permissible. *Id. Byrd* shows that not all courts have used the wooden logic of *Smith* and *Shehee*. *See also Walden v. Georgia-Pacific Corp.*, 126 F.3d 506, 521 (3rd Cir. 1997) (non-decision-

maker's stray remarks showing bias may be properly used by litigants as circumstantial evidence of discrimination).  On a more fundamental level, though, *Byrd*'s logic is not necessary for Scott to survive a motion to dismiss, precisely because Scott alleges that the transmission of the letter – which is analogous to the bias of the subordinate in *Byrd* – was the adverse action.  Under *Byrd*'s logic, Scott would be able to chase the Parole Board for rubber-stamping the accusations of the conspirators, but Scott is not suing the Parole Board.

### 3.  Did the protected conduct cause the retaliatory transmission?

Judge Morgan makes the point that if the writing of the letter – or more appropriately, the transmission of the letter – constitutes the adverse action, then Scott has not adequately alleged the third element of a § 1983 retaliation claim, that the adverse action was motivated by the plaintiff's protected conduct.  The report says so because Scott hasn't stated any facts that Cremonte, who wrote the letter, or Getzen, who transmitted the letter to the Parole Board, knew about Judge Burress's subpoena.  However, Scott is alleging a conspiracy among the defendants. Without discovery, he may not be able to point to specific meeting times or conversations that the alleged conspirators had while he was incarcerated.  *See Weberg v. Franks*, 229 F.3d 514, 528 (6th Cir. 2000) ("Rarely in a conspiracy case will there be direct evidence of an express agreement among all the conspirators to conspire, . . . circumstantial evidence may provide adequate proof of conspiracy.").  As discussed, Scott adequately alleges conspiracy under *Memphis Local*, and conspiracy would explain how Cremonte and Getzen knew about the subpoena.

Furthermore, *Thaddeus-X* emphasizes that the causal link between protected conduct and adverse action requires an analysis of the "subjective motivation of the defendants."  *Thaddeus-X*, 175 F.3d at 399.  Discovery is appropriate so that Scott can have a chance to examine the defendants and uncover their motivations, which may not be manifest.  The court will tailor discovery to allow for less invasive means to take place first, such as written interrogatories, and if those provide Scott with any hope of factual development of his claims, then more intrusive discovery like depositions can be arranged.

VII. Conclusion

In sum, the court denies the motions to dismiss as to Burress and Lavan, because Scott's complaint is facially valid. After some discovery has taken place, summary judgment could be appropriate.

Although there is no constitutional right to counsel in civil cases, the court will assign pro bono counsel for Mr. Scott. Shortly afterward, the court will hold a status conference.

The court GRANTS IN PART and REJECTS IN PART Scott's objections to Magistrate Judge Morgan's report and recommendation. Accordingly, the report and recommendation is REJECTED IN PART as to Burress and Lavan and ADOPTED IN PART as to the other defendants.

Burress and Cremonte's motion to dismiss is GRANTED IN PART as to Cremonte and DENIED IN PART as to Burress.

Lavan's motion to dismiss is DENIED.

The court GRANTS Cobb's motion to dismiss, as well as Getzen, Corona, and DeClerq's motion to dismiss.


SO ORDERED.


S/ARTHUR J. TARNOW
Arthur J. Tarnow
United States District Judge

Dated: March 3, 2008

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 3, 2008, by electronic and/or ordinary mail.

S/V. Sims for THERESA E. TAYLOR
Case Manager